UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN LINTON,<br><br>Plaintiff,<br>v.<br><br>DOUGLAS L. JOHNSON,<br>JOHNSON & JOHNSON, LLP,<br>and NANCY LEE GRAHN,<br><br>Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br><br>5-10-CV-00585 OG (NN) |

REPORT AND RECOMMENDATION

TO: Honorable Orlando L. Garcia
   United States District Judge

Pursuant to the Order of referral of the above styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, this report addresses the

---

[1]Docket entry # 5.

pending motions to dismiss for lack of personal jurisdiction.² This my second report in this case. The first report addressed the motion to remand this case to state court.³ The district court accepted the first recommendation and denied plaintiff John Linton's motion to remand.⁴ In this report, I recommend granting the motions to dismiss for lack of personal jurisdiction and dismissing this case.

**Nature of the case**. In the case before the court, defendants Douglas L. Johnson and Johnson & Johnson, L.L.P. (the Johnson defendants) represent two separate clients in two California state cases. The first case is the *Armuth* case, in which Linton is a defendant. The Johnson defendants represent Jo Armuth. The second case is the *Grahn* case. In that case, the Johnson defendants represent Nancy Lee Grahn. Linton is not a party to the *Grahn* case, but is financially tied to the business entities sued in the *Grahn* case.⁵ Grahn is named as a defendant in the case before the court.

The Johnson defendants and Grahn reside in California. Johnson & Johnson,

---

²Docket entry #s 2 & 29.

³Docket entry # 21.

⁴Docket entry # 28.

⁵Although, the record in this case contains little information about the California lawsuits, the complaint in Cause No. SA-11-CV-019-OG details the allegations in the *Armuth* and *Grahn* lawsuits. In Cause No. SA-11-CV-019-OG, Maxum Indemnity Company seeks declaratory judgment that it has no duty to defend Linton or business entities sued in the state-court lawsuits. Maxum also asked the district court to rescind the applicable insurance policies based on alleged material misrepresentations.

L.L.P. is a limited liability partnership formed and existing under the laws of California. It does not maintain a regular place of business in Texas, nor does it conduct business in Texas. It does not have a person or agent appointed in Texas for service of process. Grahn is an actress. She hired Johnson & Johnson, L.L.P. to sue several business entities for the unauthorized use of her likeness to sell a skin care product. Linton is an equity holder and/or director of the sued business entities.

Linton filed this case in Texas state court, asserting jurisdiction based upon telephone calls and emails between himself and the Johnson defendants concerning the *Grahn* lawsuit. Linton allegedly received the communications in Texas. Linton identified no communications between himself and Grahn.

The Johnson defendants moved to dismiss the case for lack of personal jurisdiction and failure to state a claim, and to transfer venue.[6] Since that time, Grahn answered and likewise moved to dismiss for lack of personal jurisdiction.[7] Both motions advanced the same essential arguments, except Grahn also complained about insufficient service of process. This report addresses the question of personal jurisdiction as to all defendants.

**Applicable standards**. In a diversity case such as this one, a federal court may

---

[6]Docket entry # 2.

[7]Docket entry # 29.

exercise jurisdiction over a nonresident defendant to the extent allowed under state law.[8] The Texas long-arm statute provides protection equivalent to that provided by the United States Constitution, and therefore, the question before the court is whether the exercise of personal jurisdiction over the defendants would offend the Due Process Clause of the Fourteenth Amendment.[9] This is a question of law.[10]

The Due Process Clause permits courts to exercise personal jurisdiction over a nonresident defendant when (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.[11] The defendant's conduct and connection with the forum state must be such that it is reasonable to anticipate being hauled into court in the forum state.[12]

"Minimum contacts" may be established sufficient for a court to assert either general or specific jurisdiction. Specific jurisdiction is appropriate where the defendant

---

[8] *See Alpine View Co. Ltd. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

[9] *Id*. at 215; *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).

[10] *Ruston Gas Turbines*, 9 F.3d at 418.

[11] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co.*, 205 F.3d at 215.

[12] *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986).

purposefully directed its activities at the forum state and the "litigation results from the alleged injuries that 'arise out of or relate to' those activities."[13] To exercise specific jurisdiction, the court must examine the relationship among the defendants, the forum, and the litigation to determine whether maintaining the suit will offend traditional notions of fair play and substantial justice.[14] In the absence of specific jurisdiction, the court may exercise general jurisdiction based on a defendant's contacts with the forum unrelated to the controversy.[15]

To exercise general jurisdiction, the court must determine whether the defendant's "contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction."[16] The contacts must show the defendant purposefully availed itself of the privileges and protections of the forum's law, so as to subject itself to jurisdiction there.[17] "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit

---

[13]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[14]*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

[15]*Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[16]*Harvey*, 801 F.2d at 777 (citations omitted).

[17]*Burger King*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

was filed."[18]  For general jurisdiction purposes, the court does not view each contact in isolation, but instead carefully investigates, compiles, sorts, and analyzes the defendant's contacts for proof of a pattern of continuing and systematic activity.[19]  The court is not concerned with the quantity of contacts, but rather with the nature and quality of those contacts.[20]

Where, as here, the court resolves the issue without an evidentiary hearing, the party asserting jurisdiction (in this case, Linton) need only present sufficient facts to establish a prima facie case in support of jurisdiction.[21]  The party's uncontroverted allegations are to be accepted as true and all conflicts between the facts contained in affidavits and other documentation are likewise to be resolved in the party's favor.[22]

---

[18]*Access Telecom v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569–70 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances up to and including the date the suit was filed to assess whether they satisfy the 'continuous and systematic' standard; the determination of what period is reasonable in the context of each case should be left to the court's discretion.").

[19]*Access Telecom,* 197 F.3d at 717 (faulting the district court because it did not examine the nonresident defendant's contacts with the forum state "in toto").

[20]*Prejean v. Sonatrach*, 652 F.2d 1260, 1265 n.4 (5th Cir. 1981); *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 805–07 (Tex. 2002); *Schlobohm v. Shapiro*, 784 S.W.2d 355, 359 (Tex. 1990).

[21]*Alpine View Co.*, 205 F.3d at 215.

[22]*Id*.

**Linton failed to make a prima facie case of specific jurisdiction**. According to Linton, the court should exercise jurisdiction over defendant because the "[d]efendants directed a serious, purposeful and extensive set of communications to Texas, to engage in business transactions with a Texas domiciliary."[23] Neither Texas courts nor the United States Supreme Court have "given much guidance as to how closely related a cause of action must be to the defendant's forum activities to support personal jurisdiction."[24] "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation."[25] In essence, "even a single purposeful contact may in a proper case be sufficient to meet the requirement of minimum contacts when the cause of action arises from the contact."[26] To exercise specific jurisdiction, the court must examine the relationship between the defendant, the forum, and the litigation.

Linton claims the Johnson defendants committed acts outside of Texas that caused tortious injury within Texas that amount to sufficient minimum contacts to exercise personal jurisdiction.[27] "[W]hen an alleged tort-feasor's intentional actions are

---

[23]Docket entry # 3.

[24]*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007).

[25]*Id*. at 583.

[26]*Southmark v. Life Investors*, 851 F.2d 763, 772 (5th Cir. 1988).

[27]Docket entry # 3.

7

expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being hauled into court there to answer for its tortious actions."[28] As tortious acts, Linton maintains the Johnson defendants violated standards of professional conduct by communicating with him in Texas and thereby subjected themselves to the jurisdiction of Texas courts.

Instead of focusing on where a defendant directed a tort or where the effects of alleged tortious conduct will be felt, courts analyze the degree of connectedness between the forum contacts and the litigation to determine whether the operative facts of the litigation focus on those contacts.[29] Linton complains that the Johnson defendants "directed an extensive series of tortious communications to a Texas domiciliary not party to the lawsuit in question or a represented party without first speaking to or obtaining permission from counsel for that party in violation of both the California and Texas rules of professional conduct."[30] Even if these allegations are true, a violation of the Texas Rules of Professional Conduct does not automatically confer personal

---

[28]*Southmark,* 851 F.2d. at 772.

[29]*Markette v. X-Ray X-Press*, 240 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[30]Docket entry # 3.

jurisdiction over an attorney-defendant.[31] When examining the relationship among the defendant, the forum, and *this* litigation, along with the "contacts" in dispute, it is hard to find a substantial connection to Texas. The Johnston defendants' alleged conduct is substantially connected to the California litigation, because resolving the California litigation formed the basis and motivation of the communications.

Linton complained about 10 telephone calls and 40 emails about settling the *Grahn* lawsuit[32] and asserted that this lawsuit is his only means to prevent the defendants from forcing a settlement from business entities sued in the *Grahn* lawsuit.[33] These allegations show that the relied-upon communications were substantially related to the California litigation—because the communications were aimed at settling the California litigation. This lawsuit serves as Linton's means of resisting settlement of the California litigation. That Linton used the communications as his motivation for this lawsuit did not transform the communications into contacts aimed at Texas. In any event, the operative facts of this case stem from the California litigation, not an injury in

---

[31]*See Trinity Indus. v. Myers & Assoc.*, 41 F.3d 229, 232 (5th Cir. 1995) (admitting violations of professional conduct does not automatically mean minimum contacts exists, by stating "[a]*ssuming minimum contacts exist, as they do herein*, a lawyer accused of violating his or her professional obligations to a client is answerable not only where the alleged breach occurred but also where the professional obligations attached.") (emphasis added).

[32]Docket entry # 3, p. 3.

[33]Docket entry # 1, Compl. ¶ 8.

9

Texas. Linton's alleged injury—receipt of a settlement demand in the *Grahn* lawsuit[34] and fear of being named as a defendant in the *Grahn* lawsuit[35]—shows connectedness to California, not Texas. The connectedness of the communications to the California litigation does not support specific jurisdiction in Texas.[36]

**Linton failed to make a prime facie case of general jurisdiction.** For a court to have general personal jurisdiction, the "minimum contacts" must demonstrate that the defendant purposefully availed itself of the privileges and protections of the forum's law, enough so to subject itself to jurisdiction there.[37] Linton claims the Johnston defendants' communications establish a prime facie case because the Johnson defendants purposely availed themselves of the privileges of Texas by causing consequences in Texas.

Neither the mere existence of an attorney/client relationship between a resident client and an out-of-state attorney, nor the routine correspondence and interactions

---

[34]Docket entry # 1, Compl. ¶ 12.

[35]*Id.*, ¶¶ 13 & 15.

[36]*Accord Brocail v. Anderson*, 132 S.W.3d 552, 563 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (determining that team doctor's contacts with Texas were insufficient to cross the constitutional threshold for jurisdiction, where the plaintiff athlete returned home to Texas and chose to undergo routine follow-care in Texas).

[37]*Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985) (citations omitted).

attendant to that relationship, are sufficient to confer personal jurisdiction.[38] In light of that rule, it is difficult to see how *non*-attorney/client communications and relationships related to the California litigation confer personal jurisdiction in Texas. Beyond the telephone calls and emails about the California litigation, the defendants did nothing to purposefully avail themselves of the privileges and protections of Texas law. The communications were not systematic or continuous. The communications do not show that the defendants purposefully availed themselves of the privileges and protections of Texas law. The communications do not support general jurisdiction.

**Recommendation**. The complained-about telephone calls and emails are insufficient to establish either specific and personal jurisdiction over any defendant. Nothing about the communications establish connectedness to Texas. For this reason, I recommend GRANTING the motions to dismiss (docket entry #s 2 & 29) and DISMISSING this case for lack of personal jurisdiction over the defendants. Accepting the recommendation will moot other pending motions. If the district court does not accept the recommendation, I will consider the defendants' other arguments for dismissing the case.

**Instructions for Service and Notice of Right to Object/Appeal.** The United States District Clerk shall serve a copy of this report and recommendation on all parties

---

[38]*Trinity Indus.*, 41 F.3d at 230; *see also Markette,* 240 S.W.3d at 468 n.2.

by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[39] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the district court.[40] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

---

[39] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[40] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

legal conclusions accepted by the district court.[41]

**SIGNED** on May 5, 2011.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[41]*Acuna*, 200 F.3d at 340; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).